UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>          Plaintiff,<br><br>v.<br><br>CAESARS ENTERTAINMENT, INCORPORATED, a Delaware Corporation, PARK PLACE ENTERTAINMENT CORPORATION, a Delaware Corporation and DOES 1-10, inclusive,<br><br>          Defendants.<br><br>ELINA MASID, JESSICA ALVARADO PANAMENO, TANGE JOHNSON and CANDELARIA TURCIOS,<br><br>          Plaintiffs/Intervenors,<br><br>v.<br><br>CAESARS ENTERTAINMENT, INCORPORATED, a Delaware Corporation, PARK PLACE ENTERTAINMENT CORPORATION, a Delaware Corporation; DESERT PALACE INC., a Nevada Corporation, dba CAESARS PALACE; JUAN GONZALEZ; DANIEL PINELO; RICARDO HERNANDEZ; and DOES 1-10 inclusive,<br><br>          Defendants. | 02:05-CV-00427-LRH (PAL)<br><br>ORDER |

Presently before the court is defendant Daniel Pinelo's ("Pinelo") Motion for Summary Judgment with Respect to all Plaintiffs'/Intervenors' Claims for Relief (# 25[1]). Plaintiffs/Intervenors Elina Masid, Jessica Alvarado Panameno, Tange Johnson and Candelaria Turcios (collectively, "Plaintiffs/Intervenors") filed an opposition (# 26) and Pinelo replied (# 27). Defendants Desert Palace, Inc. d/b/a Caesars Palace, Caesars Entertainment, Inc., and Park Place Entertainment Corporation (collectively, "Caesars") have filed a joinder (# 31) in Pinelo's motion. Plaintiffs/Intervenors have filed an opposition (# 34) and Caesars replied (# 42). Plaintiffs/Intervenors have also filed two statements of undisputed facts (#s 37, 39).

## I. Factual Background

This is a sexual harassment and retaliation action brought by the United States Equal Employment Opportunity Commission ("EEOC") pursuant to Title VII of the Civil Rights Act of 1964. Plaintiffs/Intervenors intervened in this action by filing a motion to intervene (# 3) on May 11, 2005. The court granted the motion and Plaintiffs/Intervenors filed a Complaint in Intervention (# 15) on June 16, 2005.

The four Plaintiffs/Intervenors have been employed by Caesars during the time periods relevant to this litigation. (Compl. in Intervention ¶¶ 4-7.) Defendant Pinelo became employed by Caesars on August 19, 2000. (Pinelo's Mot. for Summ. J., Aff. of Pinelo, Ex. B. ¶ 2.) Pinelo was initially hired as a "utility/kitchen worker," but was later promoted to "Assistant Manager - Stewarding." *Id*.

Plaintiffs/Intervenors allege that Pinelo "engaged in a persistent pattern of severe and pervasive harassment" that included, among other things, making sexually explicit comments, touching Plaintiffs/Intervenors, exposing his genitals, ejaculating in front of or onto Plaintiffs/Intervenors, and pushing Plaintiffs/Intervenors against a wall. (Compl. ¶¶ 35, 40, 44,

---

[1] Refers to the court's docket number.

131, 151, 153, 161.)

Plaintiffs/Intervenors filed charges of discrimination and sexual harassment with the EEOC and the Nevada Equal Rights Commission ("NERC") on November 18, 2002. (Opp'n to Pinelo's Mot. for Summ. J. at 2.) On November 22, 2002, Caesars placed Pinelo on administrative leave. (Pinelo's Mot. for Summ. J. at 8.) Pinelo never returned to work, and his employment was terminated on December 26, 2002. *Id*. Following an investigation, the EEOC filed a class action lawsuit aginst Caesars on March 31, 2005. (Opp'n to Pinelo's Mot. for Summ. J. at 2.) In their complaint in intervention, Plaintiffs/Intervenors have asserted both state and federal claims of sexual harassment and retaliation along with state tort claims for battery, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, false imprisonment, and negligence.

**II. Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). *See also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal. 2001). For those

issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett*, 477 U.S. at 325.

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III. Discussion**

In seeking summary judgment, Pinelo first argues that the state and federal statutory claims must be dismissed because Pinelo is not an employer. (Mot. for Summ. J. at 8-9.) As to the state tort claims, Pinelo argues that they must be dismissed because the statute of limitations has expired. *Id*. at 9. The court will discuss each argument in turn.

**A. State and Federal Statutory Claims**

Plaintiffs'/Intervenors' first five claims for relief allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.*, and sections 613.330 and 613.340(a) of the Nevada Revised Statutes, Nev. Rev. Stat. §§ 613.330, 613.340(a). *See* (Compl. in Intervention.) The question this court must answer is whether an individual can be held liable under either the state or federal statutory schemes.

4

1  Section 2000e–2(a)(1) makes it an unlawful employment practice "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Sexual harassment is a species of gender discrimination and thus constitutes a violation of Section 2000e-2. *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

In *Miller v. Maxwell's Int'l Inc.*, the Ninth Circuit addressed the issue of whether an individual has personal liability under Title VII. 91 F.2d 583, 587 (9th Cir. 1993). After noting a disagreement among some courts, the Ninth Circuit stated that the statutory scheme of Title VII "indicates that Congress did not intend to impose individual liability on employees." *Id*. For this reason, it is clear that Plaintiffs/Intervenors cannot bring a Title VII action against Pinelo.

In addition to Title VII, Plaintiffs/Intervenors have brought related state law causes of action for discrimination and retaliation. Nevada Revised Statutes section 613.330(1)(a) is almost identical to Title VII and prohibits discrimination based on "race, color, religion, sex, sexual orientation, age, disability or national origin." *See* Nev. Rev. Stat. § 613.330(1)(a). The parties have not cited any authority indicating whether an individual can be held liable under Nevada's statutory scheme and the court's independent research did not reveal any such authority. Therefore, this issue appears to be one of first impression, and the task of this court is to predict how the Nevada Supreme Court would decide the issue. *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1126 (9th Cir. 2005) (citing *Walker v. City of Lakewood*, 272 F.3d 1114, 1125 (9th Cir. 2001)).

Due to the similarity between Title VII and Nevada's anti-discrimination statutes, the Nevada Supreme Court often looks to the federal courts for guidance in discrimination cases. *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005). In this instance, the court sees no meaningful distinction between Title VII and Nevada's statutory scheme in relation to the reasoning used by the Ninth Circuit in *Miller*. Therefore, it appears to this court that the Nevada Supreme Court

5

would find that there is no liability for an individual pursuant to sections 613.330(1) and 613.340(a) of the Nevada Revised Statutes. Accordingly, summary judgment will be granted on Plaintiffs'/Intervenors' first five claims for relief against Pinelo.

**B. State Tort Claims**

In addition to the statutory claims addressed above, Plaintiffs/Intervenors have brought a number of tort claims including battery, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, false imprisonment, and negligence. (Compl.) Pinelo and Caesars argue that these state law tort claims are barred by Nevada's two-year statute of limitations. (Pinelo's Mot. for Summ. J. at 12-14.) In opposition, Plaintiffs/Intervenors seek to apply the doctrine of equitable tolling in order to allow their claims to move forward. (Opp'n to Pinelo's Mot. for Summ. J. at 5-9.)

In the absence of equitable tolling, it is undisputed that Plaintiffs'/Intervenors' state law tort claims are barred by the statute of limitations. *See* Nev. Rev. Stat. § 11.190(4). "Nevertheless, in situations 'where the danger of prejudice to the defendant is absent, and the interests of justice so require, equitable tolling of the limitations period may be appropriate.'" *Sieno v. Employers Ins. Co. of Nevada*, 111 P.3d 1107, 1112 (Nev. 2005) (quoting *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002)). In Nevada, the doctrine of equitable tolling was originally adopted in the context of Nevada's anti-discrimination statutes but has since been extended to operate in other areas of the law. *Id.*; *Copeland v. Desert Inn Hotel*, 673 P.2d 490, 492 (Nev. 1983).

Nevada courts use six nonexclusive factors in determining whether equitable tolling should be applied: (1) the diligence of the claimant; (2) the claimant's knowledge of the relevant facts; (3) the claimant's reliance on authoritative statements by the administrative agency that misled the claimant about the nature of the claimant's rights; (4) any deception or false assurances on the part of the employer against whom the claim is made; (5) the prejudice to the employer that would actually result from delay during the time that the limitations period is tolled; (6) and any other

equitable considerations appropriate in the particular case. *Copeland*, 673 P.2d at 492.

In examining these factors, the court concludes that equitable tolling is not warranted in this case. First, Plaintiffs/Intervenors have not presented any evidence or argument showing that they diligently pursued their state law tort claims. Although Plaintiffs/Intervenors pursued their statutory claims by filing charges with the EEOC and the NERC, they have not presented any justification as to why they did not pursue their state law claims. There is no provision in Title VII that would have prevented Plaintiffs/Intervenors from pursuing their state law claims during the pendency of the EEOC investigation. *See* 42 U.S.C. §§ 2000 *et seq.*

As to the second factor, it is clear that Plaintiffs/Intervenors were aware of the relevant facts in this case. Plaintiffs/Intervenors Elina Masid, Jessica Alvarado Panameno, and Candelaria Turcios became aware of their potential actions as early as November of 2002. (Plaintiffs'/Intervenors' Resp. to Def.'s Separate Statement of Undisputed Facts at 6.) Similarly, Plaintiff/Intervenor Tange Johnson had complained about Defendant Ricardo Hernandez's actions on February 14, 2001, and retained counsel on April 17, 2001. *Id*. at 4, 6. With respect to the third and fourth *Copeland* factors, there is no evidence that Plaintiffs/Intervenors relied on any authoritative statements by the administrative agency or that they were deceived by Caesars.

The fifth factor of the *Copeland* test requires the court to determine whether prejudice would result from delay during the time period the limitations period is tolled. *Copeland*, 673 P.2d at 492. Defendants argue that they will be prejudiced in defending the claims because "Plaintiffs cannot even recall the exact day, week, or month when the alleged misconduct took place." (Pinelo's Reply to Opp'n to Mot. for Summ. J. at 9.) Plaintiffs/Intervenors, on the other hand, argue that "the EEOC and NERC have preserved [their] sworn statements at or around the time the tortious conduct occurred and have preserved witness statements." (Mem. of P. & A. In Support of Opp'n to Def.'s Joinder at 7-8.)

Under the circumstances of this case, the court finds that any prejudice to Defendants

7

would be minimal in light of the EEOC and NERC investigations. Plaintiffs'/Intervenors' state tort causes of action all arise out of the same conduct and events that form the basis for their statutory causes of action. Therefore, it appears that evidence relating to these claims was preserved through the investigations conducted by the EEOC and NERC. Nevertheless, some prejudice may exist due to the likely difficulty of conducting independent investigations years after the alleged conduct occurred.

Finally, this court, in considering whether to equitably toll the statute of limitations, can consider any other equitable considerations appropriate in the particular case." *Copeland*, 673 P.2d at 492. In this case, the court agrees with Plaintiffs/Intervenors that combining the state law causes of action with the statutory causes of action promotes judicial economy. As mentioned previously, the evidence necessary to prove each set of claims is likely similar. Thus, all Plaintiffs'/Intervenors' causes of action could be conveniently tried together.

Nonetheless, taken together, the *Copeland* factors do not warrant equitable tolling. *See Copeland*, 673 P.2d at 492; *See also Arnold v. United States*, 816 F.2d 1306, 1312-13 (9th Cir. 1987) (declining to equitably toll the limitations period for tort claims, filed pursuant to California law, while the Plaintiff pursued her Title VII remedies). Plaintiffs/Intervenors have not provided any explanation as to why they did not pursue their state causes of action during the pendency of the EEOC and NERC investigations. To the extent Plaintiffs/Intervernors were concerned with judicial economy, they could have filed a complaint with respect to the state causes of action and then sought a stay and eventual consolidation with the statutory claims. The fact that minimal prejudice would befall Defendants is insufficient, by itself, to warrant equitably tolling the statute of limitations. Although the court is sympathetic to Plaintiffs/Intervenors and the egregious allegations contained in the Complaint in Intervention, the court will not equitably toll the limitations period when Plaintiffs/Intervenors took no steps to preserve their claims.

///

1     IT IS THEREFORE ORDERED that Pinelo's Motion for Summary Judgment with Respect
2 to all Plaintiffs'/Intervenors' Claims for Relief (# 25) is hereby GRANTED.
3     IT IS SO ORDERED.
4     DATED this 23rd day of April, 2006.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE